UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TERENCE N. GLENN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 26-10252-ADB |
| | * | |
| OCEAN 650/GREYSTAR, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

ORDER

BURROUGHS, D.J.

Pro se plaintiff Terence Glenn has filed a civil complaint, and motions to proceed in forma pauperis, for a temporary restraining order ("TRO"), and for appointment of counsel. As set forth below, the Court **DENIES** the motion for a temporary restraining order. The Court will address the other motions and the sufficiency of the complaint in a separate order.

I.   **Background**

In his complaint, [ECF No. 1], Glenn alleges that his landlord, "Ocean 650" has wrongfully initiated "a retaliatory eviction" against him, "a disabled tenant[,] immediately after he reported safety code violations to the City." [Id. at 6.]. Glenn also alleges that Ocean 650 "failed to provide reasonable security accommodations (fixing locks)" for him, even though he was "known to be hospitalized and at risk." [Id.]. Glenn asserts that this action is a federal lawsuit because "[i]t is illegal under US Federal Law to retaliate against a person for exercising their housing rights or to deny safety accommodations based on disability status." [Id.].

In addition to the separately filed motion for a TRO, within his complaint, Glenn asks for a temporary restraining order "legally staying [pausing] Summary Process Eviction action"

against him "currently pending in Chelsea district Court (Case No. 25SP7200)." [Id. at 10.]. Glenn represents that the case is "scheduled for" February 2, 2026. [Id.]. He also asks for TROs (1) "staying all related state court matters, including the pending case involving 'Miya Glen,' as these matters are intertwined with the Federal Civil Rights violations alleged herein" and (2) compelling Ocean 650 and two other defendants "to preserve all digital records, video surveillance (hallway cameras) and call logs relevant to this case." [Id.].

In his separate motion for a TRO, [ECF No. 3], Glenn alleges that, "[u]nless this Court acts immediately, Plaintiff—a disabled man recovering from major surgery—will be physically evicted on February 2, 2026." [Id.]. Glenn asks this Court "to issue an Order immediately blocking the February 2nd Eviction Hearing and Staying the 'Miya' State Court Case until this Federal Court can review the full evidence." [Id.].

## II. Discussion

The Court denies the motion for a TRO because providing the relief Glenn seeks would unnecessarily interfere with a pending state-court action, in contravention of principles of comity between state and federal courts.

"Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the United States Supreme] Court." Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970). "As early as 1793, Congress manifested its understanding and intention that the state courts be allowed to conduct state proceedings free from interference by the federal courts, when it prohibited the federal courts from issuing injunctions to stay proceedings in state court." In re Justices of Superior Ct. Dep't of Mass. Trial Ct., 218 F.3d 11, 16 (1st Cir. 2000). "This congressional policy, subject to only a few

exceptions, has remained essentially unaltered to this day, and is reflected in the federal courts' own policies." Id. (citations omitted).

The federal Anti-Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The statute "is a necessary concomitant of the [decision of the Framers of the Constitution] to authorize, and Congress' decision to implement, a dual system of federal and state courts." Smith v. Bayer Corp., 564 U.S. 299, 306 (2011) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988)). The Anti-Injunction Act's "core message is one of respect for state courts," and it "commands that those tribunals 'shall remain free from interference by federal courts.'" Id. (quoting Atl. Coast Line R. Co., 398 U.S. at 282). Put differently, the Anti-Injunction Act "says that federal courts cannot by injunction govern the conduct of state litigation," and that "federal courts must abstain from disrupting ongoing state litigation in all but the most extraordinary situations." Mannix v. Machnik, 244 F. App'x 37, 39 (7th Cir. 2007).

Here, there is no "extraordinary situation[]," id., that would justify a federal court's interference the proceedings of the state court eviction proceeding. See Kucherenko v. Chelsea Hous. Auth., No. 22-cv-10955, 2023 WL 12098666, at *3 (D. Mass. Aug. 28, 2023) ("Federal courts have held that the [Anti-Injunction Act] bars the granting of injunctive relief that would stay ongoing state court eviction proceedings or prevent the enforcement of a state court eviction-related order."). The state courts—at the trial and appellate level—are competent to consider whether Glenn's eviction would violate state or federal law. Glenn also does not set forth a basis for interfering in the "Miya" case.

3

## III.   Conclusion

Glenn's motion for a temporary restraining order, [ECF No. 3], is **DENIED**.  No summonses shall issue pending the Court's adjudication of the other motions and a review of the complaint pursuant to 28 U.S.C. § 1915(e)(2).

    IT IS SO ORDERED.


January 26, 2026                                         /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE