**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TERENCE N. GLENN<br><br>                Plaintiff,<br>     v.<br><br>OCEAN 650/GRAYSTAR MANAGEMENT<br>SERVICES, LP, ET AL.<br><br>                Defendants. | Civil Action No. 1:26-cv-10252-ADB |

**GREYSTAR REVERE, LLC'S (A) CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS AND (B) OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(c), Greystar Revere, LLC ("Greystar") submits this cross-motion for judgment on the pleadings and opposition to Plaintiff Terence N. Glenn's ("Mr. Glenn") "Emergency *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction Pursuant To 42 U.S.C. § 3604 and Fed. R. Civ. P. 65."

Mr. Glenn, a holdover tenant, commenced this federal action in response to a summary process action that Greystar initiated in Massachusetts Housing Court in November 2025 against Mr. Glenn for failure to pay rent. Two days ago, on April 27, 2026, the Housing Court held a hearing, refused to lift a default judgment against Mr. Glenn, and allowed Greystar's request for issuance of an execution. Once the execution is issued, Mr. Glenn will likely be evicted, mooting this action.

Until that time, Mr. Glenn continues to seek to have this Court interfere with the summary process action. He has asserted three counts alleging violations of the Fair Housing Act ("FHA"),

1

42 U.S.C. §§ 3604(f), 3617, and "State-Level Retaliatory Eviction," Mass. G.L. c. 186, § 18, and has moved for mandatory preliminary injunctive relief.  Because Mr. Glenn has failed to plead a violation of any federal or state law, the Court should dismiss his second amended complaint with prejudice and enter judgment in Greystar's favor.  Further, assuming only for argument's sake that Mr. Glenn has pleaded a plausible violation of the FHA (he has not), the Court should deny his motion because he has failed to satisfy the factors necessary for entry of mandatory preliminary injunctive relief.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 19, 2024, Mr. Glenn and Shamir Joseph signed a lease with Greystar to occupy Unit 709 located at 650 Ocean Avenue, Revere, Massachusetts.  *See* Declaration of Dalton Sousa ("Sousa Decl."), Ex. A (Apartment Lease Contract).  The term of the lease commenced on October 22, 2024, and expired on January 21, 2026.  *Id.* at p. 1.  The base rent and charges were $2,518.00 per month, payable in advance on or before the first day of each month.  *Id.* at p. 1.  Under paragraph 26 of the lease, Mr. Glenn and Mr. Joseph were each "jointly and severally liable for all Lease Contract obligations."  *Id*. at p. 4.   Mr. Glenn and Mr. Joseph last made a rent payment in June 2025.  *See* Sousa Decl., Ex. B (Full Ledger of Unit 709 charges and payments).  As of April 22, 2026, the outstanding balance owed by Mr. Glenn under the lease is approximately $21,802.47.  *Id.*[1]

On November 24, 2025, Greystar filed a summary process action against Messrs. Mr. Glenn and Mr. Joseph in Massachusetts Housing Court seeking, among other relief, to evict them for non-payment of rent.  *See* Sousa Decl., Ex. C (Summary process complaint in *Greystar Revere, LLC v. Shamir A. Joseph et al.*, No. 25H84SP007200).  Paragraph 47 of the lease contains

---

[1] Mr. Glenn has represented that Mr. Joseph no longer resides in Unit 709.

governing law and venue provisions.  It states, in part, that: "If Owner or Resident brings a lawsuit or any other action relating to this Lease, Owner or Resident agrees to file its lawsuit in the Massachusetts County where the Property is located.  Owner and Resident agree to the exclusive jurisdiction of this court and consent to venue in that court.  Resident agrees that this Lease will not limit or waive any rights of the Owner or Resident under applicable United States federal, state or local laws."  Sosua, Decl., Ex. A at p. 6.  Accordingly, the parties agreed in the lease that they would assert any federal or state claims against one another in the court in which litigation was first filed.  The Housing Court has jurisdiction to adjudicate alleged FHA violations.  *See* 42 U.S.C. § 3613(a)(1)(A) (stating FHA action may be brought "in an appropriate United States district court or State court"); Mass. G.L. c. 185C, § 3 (vesting housing courts with "all the powers of the superior court department including the power to grant . . . preliminary injunctions").

On January 21, 2026, Mr. Glenn commenced this action naming and misnaming various defendants, all but one of whom has since been terminated from the case.  *See* CM/ECF Doc. 25 (Mar. 10, 2026 Electronic Order).  On January 26, 2026, the Court denied Mr. Glenn's first motion for a temporary restraining order on comity and Anti-Injunction Act grounds, finding that granting the relief Mr. Glenn sought "would unnecessarily interfere with a pending state-court action, in contravention of principles of comity between state and federal courts."  CM/ECF Doc. 6 at p. 2.

On January 27, 2026, Mr. Glenn filed an answer in the Housing Court action.  *See* Sousa Decl., Ex. D at Dkt. 12 (Docket sheet for *Greystar Revere, LLC v. Shamir A. Joseph et al.*, No. 25H84SP007200).  On February 4, 2026, the Housing Court entered a default judgment for $15,807.88 against Mr. Glenn after he failed to appear for a scheduling hearing.  *See id.* at Dkt. 14.

3

On February 19, 2026, the Court denied Mr. Glenn's second emergency motion for a temporary restraining order and preliminary injunction (CM/ECF Docs. 8 and 12), reiterating that federal interference with the ongoing state court eviction proceeding would run afoul of the Anti-Injunction Act. The Court found that Mr. Glenn had not demonstrated a likelihood of success on the merits and had not shown that "immediate and irreparable injury, loss, or damage will result [to him] before [the Defendants] can be heard in opposition." CM/ECF Doc. 17.

On March 4, 2026, Mr. Glenn filed a motion in this Court for leave to file a second amended complaint with a proposed second amended pleading. *See* CM/ECF Doc. 22. The Court allowed the motion to amend on March 10, 2026. *See* CM/ECF Doc. 25, 26. In his current complaint, Mr. Glenn declares that Unit 709 "has suffered physical collapse characterized by '8 Points of Failure,' including the literal separation of exterior walls and balcony door frames from the building's structural frame." Sec. Am. Compl. ¶9. He proclaims that "[t]his unsealed breach exposes the interior elements and moisture ingress, presenting a high probability for the proliferation of lethal Aspergillus mold, a catastrophic hazard for an immunocompromised, post-operative patient." *Id.* at ¶10. In Count I, Mr. Glenn alleges a violation of 42 U.S.C. § 3604(f), claiming that "Defendants discriminated against Plaintiff in terms, conditions, and privileges of rental a [sic] dwelling because of a handicap by refusing to make reasonable accommodations (a 2-bedroom unit transfer) necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling." *Id.* at ¶14. In Counts II and III, Mr. Glenn alleges retaliation under the FHA and state law. *Id.* at ¶¶15, 16.

On Saturday, March 7, 2026, three days after he filed his motion to amend and proposed second amended complaint, Mr. Glenn emailed Greystar a purported "clinical evaluation from a state contracted medical professional," and made demand "[u]nder the Federal Fair Housing Act (FHA) and HUD guidelines, [that] the documented medical requirement necessitates an immediate

transfer to an available two-bedroom unit as a Reasonable Accommodation."  CM/ECF Doc. 24-6 (Ex. D to preliminary injunction motion).  Mr. Glenn has not pleaded that he notified Greystar prior to March 7, 2026, that he wanted to be transferred to a two-bedroom unit.  Mr. Glenn said that "[y]ou have exactly 24 hours from the timestamp of this digital submission to conform the release of the two-bedroom unit and initiate the lease addendum and key transfer."  *Id*.  His lease, however, had already expired on January 21, 2026.  Mr. Glenn stated that "[i]f I do not receive written confirmation of the transfer by this time tomorrow I will file an Emergency Ex Parte Temporary Restraining Order (TRO) and Injunction in Federal Court (Case No. 1:26-cv-10252-ADB) on Monday morning to legally compel the transfer and seek maximum damages for the willful obstruction of my civil rights."  CM/ECF Doc. 24-6.  On March 9, 2026, he filed the instant preliminary injunction motion.

Also on March 9, 2026, City of Revere officials inspected Unit 709 and issued an Inspection Report the following day, March 10, 2026.  *See* Sousa Decl., Ex. E (City of Revere Inspection Report).  Contrary to the allegations in the second amended complaint, the City's housing and health inspectors found (1) "no violations of the State Sanitary Code," (2) no structural issues and (3) "no mold or signs of water intrusion" in Unit 709:

## Inspection Report

105 Code of Massachusetts Regulations (CMR) 410.000: *Minimum Standards of Fitness for Human Habitation,* *State Sanitary Code, Chapter II*

Date:   **March 10, 2026**

To:     **Terence N. Glenn**
        **650 Ocean Avenue, Unit #709, Revere, MA 02151**

Re:     **Inspection request for 650 Ocean Avenue, Unit #709, Revere, MA 02151**
        **Parcel ID: 10-166&168-13C**

In accordance with 105 CMR 410.600, an inspection was made of **650 Ocean Avenue, Unit #709, Revere, MA 02151** on **March 9, 2026**, at **11:30 am** by Michael Wells, Director of Municipal Inspections/Health Agent, Building Inspector Hazem Hamdan, and Housing Inspector Ricci LaCentra. Also present was Terence N. Glenn, occupant and Martias Schoen, Mr. Glenn's Personal Care Attendant, and Attorney Quinn O'Sullivan, counsel for Office of Municipal Inspections. The inspection was conducted in response to Mr. Glenn's inspection request dated March 3, 2026.

The inspection revealed **no violation**s of the State Sanitary Code. Cracks observed by the Occupant at the corners of the walls were inspected and determined not to be a structural issue and ordinary based on this type of construction. No mold or signs of water intrusion were observed. Please see **Exhibit A**, **Inspection Photographs.**

| Address: 650 Ocean Avenue | Unit # 709 | City/Town: Revere |
|---|---|---|

*Id.* at p. 2.

On March 11, 2026, the Housing Court entered an order granting Mr. Glenn's motion to vacate the default and scheduling a summary process trial for March 30, 2026. *See* Sousa Decl., Ex. D (docket entries dated March 11, 2026). On March 27, 2026, Mr. Glenn filed a motion to continue the summary process trial. *See id.* at Dkt. 22. On March 30, 2026, the Housing Court denied Mr. Glenn's motion for a continuance and defaulted him a second time because he failed to appear for the summary process trial. *See id.* at Dkt. 22, 23 & entry dated March 30, 2026.

On April 6, 2026, Mr. Glenn filed a motion to vacate the second default. *See id.* at Dkt. 29. On April 27, 2026, the Housing Court denied Mr. Glenn's motion to vacate the second default, finding that he "had failed to provide a reason for the failure to appear for the second time." Sousa Decl., Ex. F (Housing Court order denying motion to vacate). That same day, the Housing Court allowed Greystar's request for the issuance of an execution, stating that "The Execution on the

6

existing judgment shall issue forthwith." Sousa Decl., Ex. G (Housing Court order granting request for execution).

## ARGUMENT

**I.   THE COURT SHOULD ENTER JUDGMENT IN GREYSTAR'S FAVOR BECAUSE THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

Because Greystar filed an answer on March 31, 2026 (CM/ECF Doc. 35), it is cross-moving for judgment on the pleadings. A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). In ruling on such a motion, the Court may consider "'documents incorporated by reference in [the complaint], matters of public record, and other matters of susceptible to judicial notice.'" *E.g.*, *Giragosian v. Ryan*, 547 F.3d 59, 65–66 (1st Cir. 2008) (holding district court properly took notice of "documents from prior state courts adjudications") (citation omitted). To survive such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where the factual allegations, even taken as true, fail to "raise a right to relief above the speculative level," dismissal is warranted. *See id.* at 555. [2]

**A.   Count I Fails To State A Discrimination Claim Under 42 U.S.C. § 3604(f) Because Mr. Glenn Did Not Request An Accommodation In Rules, Policies, Practices, or Services.**

Count I of Mr. Glenn's second amended complaint fails to state a plausible claim for disability discrimination under the FHA. To plead such a claim, a plaintiff must allege facts showing: (1) a qualifying handicap; (2) the defendant's actual or constructive knowledge of that

---

[2] On April 23, 2026, Mr. Glenn filed a Motion for Leave to File Third Amended Complaint with a proposed third amended complaint. CM/ECF Doc. 40. The Court should ignore Mr. Glenn's fourth attempt to submit a viable pleading and enter judgment in Greystar's favor.

7

handicap; (3) a request for a specific accommodation that is both reasonable and necessary to afford equal opportunity to use and enjoy the housing; and (4) the defendant's refusal to make the requested accommodation. *See Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 67 (1st Cir. 2010). Count I refers to § 3604(f)(3)(B) of the FHA, which defines discrimination as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); Sec. Am. Compl. ¶14 (alleging that Greystar "discriminated against plaintiff in terms, conditions, and privileges of rental a[sic] dwelling because of a handicap by refusing to make reasonable accommodations").

Count I does not identify any rule, policy, practice, or service of Greystar that should be modified to afford Mr. Glenn an equal opportunity to use his unit. Mr. Glenn signed a lease in October 2024 for a one-bedroom unit. By its terms, the lease expired on January 21, 2026. Mr. Glenn continues to occupy his apartment as a holdover tenant who owes Greystar over $21,000 in unpaid rent and other charges, a balance that is growing. On March 7, 2026, approximately one and one-half months after his lease expired, Mr. Glenn demanded a transfer to a two-bedroom unit and that Greystar "initiate the lease addendum and key transfer." CM/ECF Doc. 24-6. That was not a request for a reasonable accommodation of a rule, policy, practice, or service. It was a demand that Greystar provide Mr. Glenn with a larger and more expensive unit under an amended lease, despite his refusal to pay rent for the unit he occupies as a holdover tenant.

First Circuit case law confirms that claims alleging a violation of § 3604(f)(3)(B) must challenge an identifiable rule, policy, practice, or service. Where there is no rule or other policy serving as a barrier to the reasonable use of a dwelling, there can be no viable discrimination claim under the FHA. *See Batista v. Cooperativa de Vivienda Jardines de San Ignacio*, 776 F.3d 38,

42–43 (1st Cir. 2015) (affirming judgment against tenant because barrier to use of dwelling was governmental subsidy determination not a landlord-imposed rule).  In contrast, courts have found cognizable FHA claims where there has been an identifiable rule or other policy that unreasonably interfered with a plaintiff's continued use and enjoyment of an existing dwelling.  *See, e.g., Castillo*, 821 F.3d at 97 (holding landlord's refusal to make exception to "no pets" bylaw to permit emotional support dog made resident's home "unavailable to him as a practical matter"); *Astralis*, 620 F.3d at 67 (enforcing ALJ order granting exception to first-come, first-serve parking policy because landlord refused to make reasonable accommodation for disabled tenants); *cf. Summers v. City of Fitchburg*, 940 F.3d 133, 141 (1st Cir. 2019) (holding municipality did not act unreasonably under FHA in refusing to exempt sober houses from state law mandating sprinklers).  Because Count I does not involve an identifiable rule, policy, practice, or service for which Mr. Glenn sought a reasonable accommodation, it is deficient as a matter of law.

Mr. Glenn's pleading also lacks alleged facts plausibly explaining why a two-bedroom unit is necessary to accommodate his alleged disability.  He says he requires a larger unit "[t]o accommodate the 24/7 care personnel and necessary medical equipment," Sec. Am. Compl. ¶8, but does not plead specific facts connecting his alleged disability to the necessity of a unit with a second bedroom.  *See Abdelrasoul v. Trustees of Boston University*, 761 F. Supp. 3d 263, 271–273 (D. Mass. 2024) (dismissing student's request for a unit transfer because the plaintiff failed to plead facts showing that the requested accommodation was both reasonable and necessary).  Count I should be dismissed for this reason as well.

### B.   Count II Fails Because Greystar Filed The Summary Process Action Months Before Mr. Glenn Demanded A Two-Bedroom Unit.

A plaintiff asserting retaliation under 42 U.S.C. § 3617 must show (1) they engaged in protected activity, (2) the defendant took adverse action against them, and (3) there is a causal link

between protected activity and the adverse action.  *See Stratton v. Bentley Univ.*, 113 F.4th 25, 41–42 (1st Cir. 2024).  Temporal proximity between the protected activity and adverse action is essential to establishing the causal link.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (temporal proximity must show that the adverse action followed the protected activity).

Greystar could not have retaliated against Mr. Glenn because it filed the summary process action to evict him before Mr. Glenn demanded a two-bedroom unit.  Greystar commenced the summary process action against Mr. Glenn for non-payment of rent on November 24, 2025.  *See* Sousa Decl., Ex. C.  Mr. Glenn made his demand on March 7, 2026, over three months later. *See* CM/ECF Doc. 24 Ex. D.  One cannot allege that an eviction action filed in November 2025 was retaliation for an accommodation request made in March 2026.  Because the summary process action was initiated months before Mr. Glenn requested a transfer to a two-bedroom unit, there is no conceivable nexus between any protected activity and the alleged adverse action.  Without this causal link, the Court should enter judgment in Greystar's favor on Count II.

**C.      Count III Does Not Assert A Plausible State Law Retaliation Claim Either.**

Under Mass. G.L. c. 186 § 18, a landlord may not take reprisal against a tenant who exercises their legal rights.  Where adverse action, other than summary process action for nonpayment of rent, is taken within six months of a tenant's protected activity, a rebuttable presumption of retaliation arises, which the landlord may overcome by clear and convincing evidence of a legitimate independent justification.  *See* Mass. G.L. c. 186, § 18.  For two reasons, this claim is fatally deficient.  First, the adverse action Mr. Glenn claims is retaliatory is a summary process action for nonpayment of rent, which is exempt from the scope of § 18.  *Id.*; *see Jablonski v. Casey*, 64 Mass. App. Ct. 744, 748 (2005).

Second, the timeline of relevant events independently defeats the claim.  Greystar commenced the summary process action on November 24, 2025, before Mr. Glenn engaged in any

alleged protected activity.  *See* Sousa Decl., Ex. C.  Mr. Glenn's habitability complaints to the City of Revere did not begin until March 2026,  Sec. Am. Compl. ¶11, and he did not submit his purported accommodation request until March 7, 2026, three months after Greystar filed the summary process action.  *See* CM/ECF Doc. 24-6. Mr. Glenn's attempt to recast a lawful eviction proceeding for nonpayment of rent as retaliatory, based on complaints made months after the proceeding was filed, does not state a plausible claim.

## II.     ALTERNATIVELY, MR. GLENN'S PRELIMINARY INJUNCTION MOTION SHOULD BE DENIED.

As a preliminary matter, Mr. Glenn's motion is barred by the Anti-Injunction Act ("Act"), which prohibits federal courts from enjoining state court proceedings except in narrow, expressly defined circumstances.  28 U.S.C. § 2283.   Federal courts must "abstain from disrupting ongoing state litigation in all but the most extraordinary situations," *Mannix v. Machnik*, 244 Fed. App'x 37, 39 (7th Cir. 2007), including interceding in a state summary process action.  *See Kucherenko v. Chelsea Hous. Auth.*, No. 22-cv-10955, 2023 U.S. Dist. LEXIS 247748, at *7, (D. Mass. Aug. 28, 2023) (finding no extraordinary situation that would justify federal court's involvement in summary process action).  This Court has already recognized as much, denying Mr. Glenn's prior motions for a temporary restraining order on this basis because "interfering with the ongoing eviction proceeding would fall afoul of the Anti-Injunction Act."  CM/ECF Doc. 17.  No exception to the Act applies here and there is no "extraordinary situation" that would justify federal interference with the Housing Court's proceedings.

Even if Mr. Glenn had pleaded any viable claims, the Court should deny his motion because his submission does not satisfy any of the four factors necessary for entry of preliminary injunctive relief.  Mr. Glenn's motion only applies to Count I as he says he brought it "[p]ursuant to 42 U.S.C. § 3604" and he "requests an immediate mandatory injunction compelling Greystar Management

to execute the two-bedroom FHA transfer." CM/ECF Doc. 24 at ¶¶2, 5. Mr. Glenn is not seeking injunctive relief as to Count II (42 U.S.C. § 3617) or Count III (Mass. G.L. c. 186, § 18).

A preliminary injunction is an "extraordinary remedy, and the movant bears the full burden of showing (1) substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020). Mandatory injunctions are especially disfavored and subject to heightened scrutiny because they "alter[] rather than preserve the status quo" and impose greater burdens on the enjoined party. *Braintree Labs., Inc. v. Citigroup Global Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010) (affirming denial of mandatory preliminary injunction); *see also 22 Franklin LLC v. Boston Water & Sewer Comm'n*, 549 F. Supp. 3d 194, 197 (D. Mass. 2021) (vacating preliminary injunction and denying mandatory injunction requiring connection to municipal water and sewer system).

A. **Mr. Glenn Has Zero Likelihood Of Success On The Merits Of Count I.**

Mr. Glenn cannot demonstrate a likelihood of success on the merits of Count I. On April 27, 2026, the Housing Court denied his most recent motion to vacate the default entered against him and allowed Greystar's request for an execution. Sousa Decl., Ex. G. Mr. Glenn's holdover tenancy will likely end soon. Aside from that, and as already explained above, Count I is legally deficient because it does not identify any rule, policy, or practice, or service that Greystar unreasonably declined to modify. Mr. Glenn also has not alleged facts showing that a transfer to a two-bedroom unit is both a reasonable and necessary accommodation for his alleged disability. Finally, the City of Revere  inspected Unit 709 on March 9, 2026, and found "no violations of the State Sanitary Code," no structural issues, and "[n]o mold or signs of water intrusion," Sousa Decl.,

12

Ex. E at p. 2, belying Mr. Glenn's false contention that the unit has suffered a physical collapse. The Court should deny the motion for these reasons alone.

### B.      Mr. Glenn Has Not Demonstrated Irreparable Harm.

Plaintiff has also failed to satisfy his substantial burden of showing irreparable harm. To establish irreparable harm the burden rests "squarely upon the movant" to show that such harm is "likely," not merely possible. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (vacating preliminary injunction); *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (affirming denial of preliminary injunction). Speculative or theoretical threats will not suffice. *See Charlesbank.* 370 F.3d at 162–163. Mr. Glenn alleges three categories of irreparable harm: (1) homelessness and loss of housing; (2) "irreparable physical and biological harm" due to exposure to structural deficiencies, moisture ingress, and potential mold; and (3) a threat of imminent medical sepsis. Sec. Am. Compl. ¶¶9, 10. None withstand scrutiny.

Mr. Glenn's claim of homelessness does not arise from any failure to accommodate his disability, but from his own inability to pay rent for over a year triggering the summary process action. A magistrate judge confronted a similar scenario in *Kucherenko v. Chelsea Housing Authority*, where a pro se plaintiff facing state-court summary process sought emergency federal injunctive relief under the FHA. The magistrate judge recommended denial, reasoning that the Housing Court was able to adjudicate plaintiff's federal claims. 2023 U.S. Dist. LEXIS 247748, at **10–11. The same is true here. The Housing Court has express authority to award damages on claims properly before it. Mass. G.L. c. 185C, § 3.

Mr. Glenn's assertions of physical and biological harm from structural deficiencies, moisture ingress, and potential mold are contradicted by the record. The City of Revere inspected Mr. Glenn's Unit, finding no violations. *See* Sousa Decl., Ex. E at p. 2. Mr. Glenn's speculative

assertions of physical harm from a building certified as safe by government inspection cannot establish irreparable injury.  Preliminary injunctions "should not [be] issue[d] merely to calm the imaginings of the movant."  *Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004).

The remaining claim of "imminent medical sepsis" fails for similar reasons. As noted above, municipal inspectors found that no hazardous conditions exist in Unit 709. Mr. Glenn's own doctor's note states only that he needs "a living environment that is warm and sanitary to enable his recovery," mentioning nothing about his current unit failing that standard, much less that he faces imminent sepsis from unit conditions.  *See* CM/ECF Doc. 24-3 (Exhibit A to preliminary injunction motion).  Taken together, the claimed harm is speculative.

### C.        The Balance Of Hardship And Public Interest Favor Denial.

Even if Mr. Glenn could establish likelihood of success on the merits and irreparable harm, which he cannot, both the equities and the public interest weigh against injunctive relief.  The Housing Court has defaulted Mr. Glenn and allowed Greystar's request for an execution.  Granting an injunction would effectively overrule that order in violation of the Act and compel Greystar to provide a two-bedroom unit to a non-paying holdover tenant, forcing Greystar to absorb ongoing financial losses while forgoing rental income from a paying tenant for the larger unit.

The public interest strongly favors denial.  Respect for parallel state proceedings is a cornerstone of our federalist system.  Interfering with a state summary process action based on health and safety allegations that municipal inspectors have already refuted would undermine the authority of the Housing Court, which is equipped to resolve the claims at issue.

### CONCLUSION

For the foregoing reasons, Greystar respectfully requests that this Court grant Greystar's cross-motion for judgment on the pleadings and dismiss Mr. Glenn's second amended complaint with prejudice; or, alternatively, deny Mr. Glenn's motion for a preliminary injunction.

14

Respectfully submitted,

**GREYSTAR REVERE, LLC**

By its attorneys,


 /s/ *Dalton Sousa*
Euripides Dalmanieras (BBO #650985)
edalmani@foleyhoag.com
Dalton Sousa (*Pro Hac Vice*)
dsousa@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617-832-3006

April 29, 2026

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2026, the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent via electronic mail to those indicated as non-registered participants.


*/s/ Dalton Sousa*
Dalton Sousa